# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 1:24-cv-01460 |
| ) | Case No. 1:20-cr-00707-1 |
| Plaintiff, ) | |
| ) | Judge J. Philip Calabrese |
| v. ) | |
| ) | |
| RICKY SIMMONDS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## OPINION AND ORDER

Petitioner Ricky Simmonds pled guilty to a total of twenty-six counts for his role in a drug trafficking operation. On January 13, 2023, the Court sentenced Mr. Simmonds to a total prison term of 250 months. After exhausting his remedies on direct appeal, Mr. Simmonds, now proceeding *pro se*, moves to vacate, set aside, or correct his sentencing under 28 U.S.C. § 2255, arguing ineffective assistance of counsel in violation of his Sixth Amendment rights. For reasons that follow, the Court **DENIES** Petitioner's motion.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Indictment, Plea Agreement, and Pre-sentencing Report

Petitioner Ricky Simmonds is currently serving a 250-month prison sentence for his participation and leadership in a drug trafficking organization. Between 2017 and 2020, Mr. Simmonds and fifteen other defendants imported and distributed methamphetamine, cocaine, and fentanyl into the Northern District of Ohio. (ECF No. 205-1.) Law enforcement officials discovered this drug operation in 2019, and a

grand jury indicted Mr. Simmonds on 32 counts of drug conspiracy and distribution charges in 2020. (ECF No. 24.)

Pursuant to a written plea agreement, Mr. Simmonds pled guilty to conspiracy (Count 1), possession and attempted possession with intent to distribute fentanyl (Counts 2 and 4), possession with intent to distribute cocaine and methamphetamine (Counts 5 and 6), and use of a communication facility to facilitate a felony drug offense (Counts 11 through 32). (ECF No. 205, PageID #866–77.) The plea agreement also contained other provisions, four of which are relevant to this petition.

First, Mr. Simmonds agreed that sentencing "rests within the discretion of the Court" and that the "advisory guideline range will be determined by the Court at the time of sentencing." (*Id.*, PageID #870.) Second, he agreed that the sentencing recommendations present in the plea agreement would not bind the sentencing court and, more specifically, that "the Court alone will decide the advisory guideline range." (*Id.*, PageID #871.) Third, Mr. Simmonds and the United States agreed that the amount of drugs involved in the offenses should place Mr. Simmonds's guideline calculations at a total base offense level of 32. (*Id.*, PageID #871–72.) Finally, the parties agreed that Mr. Simmonds should get a three-level sentencing reduction for acceptance of responsibility. (*Id.*, PageID #872.) They also agreed that the United States would argue at sentencing for a two-level enhancement for possession of a firearm and another two-level enhancement for being the organizer or leader of criminal activity—but that "no other specific offense characteristics, Guideline adjustments or Guideline departures apply." (*Id.*)

2

In the presentence investigation and report, the probation office provided a recommended guideline calculation that differed from that of the parties in the plea agreement. (ECF No. 290, PageID #1876–80.) For the base offense level, the presentence report accounted for the *total* converted drug weight, which was over 48,000 kilograms (*id.*, PageID #1877–79), rather than the 1.2- to 4-kilogram range in the plea agreement (ECF No. 205, PageID #872), yielding a base offense level of 36. Then, in addition to adding a two-level enhancement for possession of a dangerous weapon, the presentence report added three other enhancements that differed from the plea agreement. Specifically, it added four levels—not two—for Mr. Simmonds's role as an organizer or leader, two levels for knowingly maintaining premises for storing controlled substances, and four levels for knowingly misrepresenting fentanyl as oxycodone. (ECF No. 290, PageID #1879–80.) After a three-level reduction for acceptance of responsibility, the total recommended offense level calculated in the presentence report came to 43. (*Id.*, PageID #1879–80.)

Despite Mr. Simmonds's objections to these enhancements, the probation officer declined to alter the recommended calculation. (*Id.*, PageID #1895–901.)

B. **Sentencing**

Petitioner alleges that he believed that the written plea agreement would govern the number of possible enhancements during his sentencing, resulting in an advisory guideline range of 151 to 188 months. Further, Petitioner argues that his defense attorney reinforced this belief by representing that "the only real challenge/concern at sentencing would be disputing the firearms and leadership

3

enhancement" and not advising him that he could potentially face additional enhancements. (ECF No. 408-1, PageID #2808–09 & #2813.) However, at sentencing the Court adopted the recommendations in the presentence report and set Mr. Simmonds's total offense level at 43 and sentenced him to 250 months in prison. (ECF No. 334. PageID #2166, #2173 & #2175.) Mr. Simmonds appealed.

### C. Direct Appeal

On appeal, Mr. Simmonds maintained that the United States breached its plea agreement when it failed affirmatively to argue for the base offense level in the plea agreement. *United States v. Simmonds*, 62 F.4th 961, 964 (6th Cir. 2023). The Sixth Circuit ruled that Mr. Simmonds failed to establish plain error and affirmed his 250-month sentence. *Id.* at 964–69. Mr. Simmonds timely petitioned for a writ of certiorari from the United States Supreme Court (ECF No. 366), which denied certiorari on October 2, 2023 (ECF No. 373).

### D. Section 2255 Petition

In August 2024, Mr. Simmonds filed this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, asserting that he received ineffective assistance of counsel because his defense attorney failed to advise him of the possibility that the probation officer could calculate, and the Court could adopt, a higher offense level. (ECF No. 408-1, PageID #2808–09; ECF No. 409, PageID #2823.) Petitioner contends that, but for his trial counsel's failure to advise him on the higher offense level calculation in the presentence report, he would not have had the "natural incentive" to accept the negotiated plea offer with the United States. (ECF No. 408-1,

4

PageID #2808–09.) In other words, Petitioner argues that his negotiation and acceptance of the plea agreement hinged on receiving a lower offense level that "limited [his] exposure to a greater sentence." (*Id.*)

## ANALYSIS

Under 28 U.S.C. § 2255, a federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct the sentence in the district court where he was sentenced. To challenge his sentence, Section 2255 requires the federal prisoner's claim to fall into one of the four circumstances to which it applies:

> [1] [T]he sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]

28 U.S.C. § 2255(a).

A petitioner seeking to attack his sentence under Section 2255 must demonstrate "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974). Vague and conclusory claims not substantiated by allegations of specific facts are insufficient to warrant relief. *Turner v. United States,* 183 F.3d 474, 476–77 (6th Cir. 1999).

Where, as here, the petitioner entered a guilty plea, "the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lownsbury*, No. 5:22-cr-41, 2024 WL 4264970, at *2 (N.D. Ohio Sept. 23, 2024)

(quotation omitted). This mechanism prevents a defendant from pleading guilty "in the hope of obtaining favorable treatment during sentencing while reserving the right to raise all manner of constitutional claims if the result of the sentencing process was not as he had hoped." *Id.* (quotation omitted).

Here, Petitioner exhausted his appellate remedies and timely files this motion under Section 2255. His sole claim is ineffective assistance of counsel against his trial counsel, alleging that his attorney failed to advise him of the consequences of his plea. (ECF No. 408-1.) Because his motion necessarily implicates a violation of his Sixth Amendment right to the effective assistance of counsel, Petitioner's claim falls within Section 2255(a)'s first basis for relief. 28 U.S.C. § 2255(a); *see also Pough v. United States*, 442 F.3d 959, 694 (6th Cir. 2006).

## I.     Governing Legal Standard

As set out in *Strickland v. Washington*, 466 U.S. 668 (1994), Petitioner must establish two elements to succeed on his ineffective assistance of counsel claim.

First, Petitioner must show that his defense attorney's conduct was "deficient." *Strickland v. Washington*, 466 U.S. 668, 687 (1994). Specifically, Petitioner must show that counsel's errors were so serious that he failed to "function[] as the 'counsel' that the Sixth Amendment guarantees to Petitioner." *Id.* at 687–88. Counsel enjoy the presumption that they discharge their duties in a sufficiently effective manner and exercise reasonable professional judgment based on the circumstances at the time. *Id.* at 690. Therefore, to establish error, Petitioner must overcome a strong

6

presumption that counsel's conduct fell "within the wide range of reasonable professional assistance." *Id.*

The second element under *Strickland* is "prejudice." In other words, Petitioner must show that counsel's deficiencies "were so serious as to deprive [him of] a trial whose result is reliable." *Id.* at 687; *see also Monea v. United States*, 914 F.3d 414, 419 (6th Cir. 2019). Like the first *Strickland* element, establishing prejudice also carries a difficult burden because it requires Petitioner to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the [original] outcome." *Id.*

A successful ineffective assistance claim requires Petitioner to establish both elements. *Strickland*, 466 U.S. at 687, 697. Therefore, failure to establish either element will cause Petitioner's claim to fail.

## II. Ineffective Assistance of Counsel

Petitioner contends that his trial counsel's failure to advise him that the presentence report might recommend a higher offense level than his plea agreement "robbed [him of the] opportunity to negotiate a better plea" and receive a lesser sentence. (*Id.*, PageID #2809, #2814.) Petitioner emphasizes that his trial counsel knew he was "adamant" about receiving a lesser sentence and advised him that "[pleading guilty] would limit his sentencing exposure," but failed to explain "that the probation office could raise his base offense level [for] conduct already agreed and stipulated to in his plea." (*Id.*, PageID #2808–09.) "Competent counsel," Petitioner

7

argues, "would have advised [him that] he was still exposed to 12 levels of enhancements that would place him in a guideline range of life." (*Id.*, PageID #2810.) Instead, he was "advised" by his defense attorney that, under the written plea agreement's calculations, "the worse he could expect at sentencing was 188 months." (*Id.*, at PageID #2813.)

Had his defense attorney advised him that the presentence report could include additional enhancements—resulting in a higher guideline range that the Court might later consider—Petitioner maintains that he "would not have accepted the offer he spent a year negotiating" and "would have sought a better plea deal" from the United States. (*Id.* at PageID #2810, 2813.) Petitioner claims that this failure, along with trial counsel's failure to inform him of the ability to negotiate conditional pleas, amounted to ineffective assistance of counsel. (*Id.*, at PageID #2808–09.)

Under the familiar and longstanding standard of *Strickland*, Petitioner is unable to carry his burden of showing that his defense attorney's conduct was so deficient as to "[fall] below an objective standard of reasonableness." *United States v. Doyle*, 631 F.3d 815, 817 (6th Cir. 2011).

**II.A.  Prejudice**

Although prejudice is the second *Strickland* element, "[c]ourts need not address the first element if the petitioner cannot prove prejudice. In fact, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Monea*, 914 F.3d at 419 (cleaned up).

8

Petitioner alleges that his defense attorney was deficient in failing to advise him that Court could adopt the additional enhancements recommended in the presentence report and a higher offense level resulting in a longer sentence. (ECF No. 408-1, PageID #2808–09.) Even assuming that trial counsel failed in this respect, the record shows that Petitioner was informed on numerous occasions about the process for determining the sentence, including the preparation of the presentence report, the Court's potential adoption of the recommendations in the presentence report, and the Court's ultimate discretion over sentencing. Petitioner's written plea agreement, plea colloquy, and Section 2255 motion all support a conclusion that he understood the Court was neither bound to follow nor necessarily influenced by the sentencing range agreed to in the written plea agreement.

### II.A.1. The Plea Agreement

After negotiating his plea agreement, Petitioner certified—through repeated initials and a signature—his understanding that

> [1] sentencing rests within the discretion of the Court . . . [2] the advisory guideline range will be determined by the Court at the time of sentencing, *after a presentence report has been prepared* . . . [3] [t]he parties have no agreement about the sentencing range to be used [or] imposed . . . [4] the recommendations of the parties *will not be binding upon the Court* . . . [and] [5] *the Court alone will decide the advisory guideline range under the Sentencing Guidelines*.

(ECF No. 205, PageID #870–71) (emphasis added).) The plea agreement's language expressly explained to Petitioner the existence of the presentence report, the Court's discretion over its sentencing determination, and the nonbinding nature of the parties' stipulations.

9

### II.A.2. The Plea Colloquy

Even apart from the plea agreement's express language, Petitioner's plea colloquy cured any misunderstanding that the Petitioner might have had about sentencing. *See Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (district court's "thorough examination at the hearing, taking careful and appropriate measures to dispel any confusion on [the defendant's] part before the plea was accepted," cured any claim defendant was prejudiced by erroneous "advice from [defendant's] trial attorney [that allegedly] led to his misunderstanding of the consequences of his guilty plea"); *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992) (trial court's "clear and thorough plea allocution" apprising defendant of "actual sentencing possibilities" prevented defendant from claiming prejudice).

During Petitioner's plea colloquy, the Court explained the preparation of the presentence report to him. (ECF No. 336, PageID #2207.) Petitioner stated under oath that he understood that the Court would consider both the offense level and his past criminal record as the major inputs calculating his range under the Sentencing Guidelines. (*Id.*, PageID #2209.)

Petitioner's plea colloquy demonstrates his awareness of two key facts that he now downplays: First, Petitioner agreed that the plea agreement lacked any "representation or guarantee" for how the Court would determine his offense level. (*Id.*) Evidence of this knowledge also appears in Petitioner's Section 2255 motion, where he cites the transcript of change-of-plea hearing that affirmed his understanding of the Guideline considerations on which the Court would rely. (ECF

10

No. 408-1, PageID 2810–12.) Second, Petitioner expressed his understanding that the Court could consider the presentence report's enhancements and calculations when determining his sentence. (*See* ECF No. 336, PageID #2207–09, #2211.)

His later account notwithstanding, Petitioner's initials and signature in the plea agreement and the responses he made under oath in his plea colloquy demonstrate that he could not have reasonably expected the offense level calculation in the written plea agreement to constrain the presentence report's independent calculation or the Court's discretion. "If we were to rely on [Petitioner's] alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999); *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity [and] constitute a formidable barrier in any subsequent collateral proceedings.").

Further, any failure to advise Petitioner of the presentence report's possible deviation from the offense level calculation in the plea agreement affects only Petitioner's choice to continue or discontinue plea negotiations, not the ultimate guideline sentencing range itself. That is, Petitioner cannot show that, but for the claimed deficient performance of his trial counsel, the result would have been different. In the end, the sentencing judge considered the parties' plea agreement, the presentence report, Petitioner's involvement and role in the drug trafficking operation, the amount and type of drugs involved, and the other statutory factors to fashion a sentence "sufficient but not longer than needed." (ECF No. 334, PageID

#2129.) Because Petitioner is unable to show that his trial counsel's assistance prejudiced the defense in a manner that would alter the outcome of his sentencing, Petitioner is unable to mount a successful ineffective assistance claim under *Strickland*.

### II.B.  Establishing Deficiency

Although failure to establish prejudice ends Petitioner's ability to prevail on his claim, he is also unable to satisfy *Strickland*'s first requirement, that his trial counsel committed errors "so serious that [he] was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 687–88.

The face of the record shows that Petitioner had opportunities to express hesitation, dissatisfaction, or concern regarding his defense attorney's representation.  Instead, when asked whether he was satisfied with his representation, and whether his defense attorney has consulted with him about "alternative ways [to] defend the case," Petitioner answered in the affirmative. (ECF No. 336, PageID #2204–05.)  During his change of plea hearing, Petitioner confirmed that he and counsel reviewed each paragraph of the plea agreement. (*Id.*)  In his sentencing hearing, Petitioner's counsel confirmed that he and Petitioner reviewed each paragraph of the presentence report. (ECF No. 334, PageID #2129.)  Petitioner's statements under oath carry "a strong presumption of verity" that counsel fulfilled his responsibility of reviewing both the plea agreement and presentence with Mr. Simmonds to secure a knowing, intelligent, and voluntary plea. *Blackledge*, 431 U.S. at 74.

Further, as mentioned above, the change of plea colloquy remedies any misunderstandings that Mr. Simmonds might have had himself or been left with based on his counsel's advice. *See Barker*, 7 F.3d at 633; *Ventura*, 957 F.2d at 1058. In other words, without evidence indicating either that trial counsel failed adequately to review the plea agreement and presentence report with Petitioner or that any such failure prejudiced Mr. Simmonds at sentencing, Petitioner cannot show deficient performance on this record in the first place.

## CONCLUSION

For the foregoing reasons, Petitioner fails to present a successful ineffective assistance of counsel claim. Therefore, pursuant to 28 U.S.C. § 2255, the Court **DENIES** Petitioner's motion (ECF No. 408).

**SO ORDERED.**

Dated: January 6, 2025

J. Philip Calabrese
United States District Judge
Northern District of Ohio